Thank you. Good morning. May it please the Court, I'm Jim Bickerton, counsel for Mr. Dubin, the appellate here. Welcome to Honolulu. I'm pleased to be the first up. The first question that may be on the minds of many who read this appeal is, why is he spending all this time and effort to appeal what is essentially a $3,900 sanction? Probably some state bar disciplinary matters at the issue, I suspect. That is correct, Your Honor. And the way this ties together, we have a local rule that provides the procedure when a judge like Judge King wants to sanction you for violating code of conduct matters. In local rule 83.3, the district court here has adopted essentially the same standard that would apply to anyone in the state of Hawaii. So if you come in pro hoc vice, for example, you have to study the local rules of professional conduct for the state of Hawaii and be bound by the same standards as any attorney practicing in Hawaii. In 83.4, they set out the procedure for disciplining someone for violating those rules. The rule at issue here is rule 1.6 of the rules of professional conduct, which is pretty much the same as it is in most states. It's the rule governing keeping client information confidential except where, and there are exceptions to it. The procedure that has to be followed for the sanction is to have a hearing committee appointed. They decide if there's probable cause. This is all in 83.4. They issue a petition or a notice. The person has 20 days to respond. This is the office of the disciplinary council of Hawaii. No, this is the U.S. District Court, Your Honor. I'm sorry if I wasn't clear. It might have been useful if some of this was in your brief. Well, Your Honor, I'm explaining why it ties in, because what the court has done I'm explaining the motivation. But it's not only why it ties in. It's what the prejudice might have been here, which is very difficult to peter out from your witness. I agree that it's a complicated record, Your Honor. I don't think that it's really necessary for me to have put this in the brief as a basis of the error, but it explains how the system generally works. The system that this court, the lower court adopted in its rules, mirrors exactly what the professional body does at the state level. As a result, the state-level people at the office of disciplinary council will generally take a USDC order and won't go and look behind it because its procedure is the same. Mr. Dubin is now faced with the problem that the ODC at the state level sees. Judge King found that you violated Rule 1.6. But Judge King did it in a strange manner that doesn't fit anywhere in the pigeonholes that you're supposed to put the various types of sanction orders. As I break it down, there's discipline, there's the inherent authority of the court to sanction, and then there are fee-shifting rules. So those are the three ways in which an attorney may be penalized for what the court is displeased with. Well, can you help me a little bit? This, I think, ties into the point you're making, and that is, on what ground did the district court invoke its authority? As I understand the procedural history of this case, the case initially came on on a motion for sanctions that was filed by the other side. And that presumably would have been under, what, the statute? Would it have been under Rule 11? They never cite any rule other than the general Rule 7 that allows you to make motions. Right. That's actually not the way it first arose. The way it first arose was in an opposition memo to other motions that had nothing to do with sanctions. They said, in an aside to the court, by the way, Mr. Dubin should be sanctioned because on these motions he has put confidential material into the record. At the hearing on those non-sanctioned motions. Okay. But it still arises on a motion by the other side claiming that counsel has engaged in unethical behavior. We think so. But Judge King didn't think so. Judge King was — if you read the transcript, Judge King was a little bit misled by opposing counsel into thinking that actually Mr. Dubin had missed his window to explain himself before the motion for sanctions was ever filed. But he did issue an order to show cause, which Mr. Dubin did not respond to in a timely fashion. Is that true? That is true. But it wasn't in the — I don't believe it was an order to show cause. It wasn't captioned an order to show cause. Exactly. But he gave them 30 days to respond, or he had 30 days to respond, and he didn't respond. At the oral hearing, he said, if you feel you need to put more in to explain yourself, then do so. Mr. Dubin, one could imagine, felt he didn't need to add any more at that point. But then nothing happened. Then there was a motion for sanctions, a formal motion, to which he responded. Well, I understand. But then it's a very confusing record to try and piece together. It looked to me like he tried sort of after the fact to incorporate by reference material that he had filed and sort of note-proton claim that it was timely filed. But it looked to me like he did miss at least one 30-day deadline. And maybe it was because he didn't understand that he needed to file something. But he was a bit recalcitrant in answering the district court's concern, was he not? He did. Sorry, excuse me. Go ahead. So then there was a formal motion. Correct. And then he didn't respond to that except quite late. No, I believe that was timely. No, it wasn't timely because it was declared a non-hearing motion, and the time to answer it was considerably sooner than he actually answered it, is my understanding. Yeah, he filed on October 12th. I haven't done the day calculation. I think it was late by quite a lot, actually. He filed two papers in opposition, Your Honor. But the nature of this type of sanction, I mean, it really wouldn't matter even if he filed nothing. This is not something where you default people. You're making a finding. He could, right, under the local rule. I assume that Judge King had the option to enter a finding that under the local rule, since he didn't file a timely response, he defaulted. But there's no indication in the record that Judge King relied on that rule. Well, there is some indication in the transcript that he was confused about whether or not Newman had submitted anything. And he didn't seem aware. Well, I suffer from the same issue as Judge King. It is a very difficult record to piece together. But I guess my point is that you could say, look, you didn't file anything, so I'm going to sanction you for not filing something. Okay, but you can't say I'm going to make a finding that you breached the attorney code of conduct. That's different, because that requires evidence. That requires him to make a judgment about Mr. Newman's subjective state of mind. Well, he did hear argument, did he not, about two specific instances with regard to the Ford dealership and also with regard to the Bank of Hawaii, where those were cited in the record as examples of confidential, non-case-related matters that had been disclosed in this 240-page submission. But we have no indication of whether on those two items he accepted Mr. Newman's analysis, which I think is quite clear in the record that they're not privileged. Those were not matters on which Newman … Why can't we conclude the opposite, that because he imposed sanctions, he found that they were, in fact, client secrets that were impermissibly disclosed? They certainly were not related to the subject of the Kauai condominium litigation. If you read the entire record, what Judge King was really concerned about was overpublication. He kept coming back to that. Why did you send it to these five people? That's what troubled him. And I don't see that he ever answered that question, nor did he try to retrieve the material from all the people that he was ordered to get it back from. What's his excuse for that? Once you have a basis to file something, it's public record. You can serve it on the world. The opening question is, were you attacked sufficiently so that under Rule 1.6, you have the right to put that stuff in the record? I thought that's not true. I thought the rule specifically says that you should publish it as little as possible, and the implication being that if you can do it under seal or if you can do it in chambers or whatever. With respect, the rule doesn't say that. There is a commentary about that that Mr. Dubin did explain. He only published it to his five other clients. They were the people who had signed agreements to replace Mr. Geiler. He didn't send it to — And therefore, what was their interest in knowing all this? Because Mr. Geiler was the one who was trying to hijack the case, turn this class action into his own private action so he could leverage it and get a big settlement for himself. Mr. Dubin felt that the statements made by Mr. Geiler that were false, to achieve that end, he should present to these other people the evidence that they were false, because they were the people who were being harmed by what Mr. Geiler was doing, and they were the people to whom he had an attorney-client. Let me say one thing and then ask a couple questions. The direction on the order of July 30th is not as you suggested, as far as I can tell you. It says that Mr. Dubin is directed to file within 30 days a written response, limited to no more than 10 pages, indicating why the relief request should not be granted. So he didn't do that. I'm sorry if I wasn't clear. At the oral argument, if you listen to the transcript, what Judge King tells counsel is, well, if you want to submit something else, you can. Now, sometimes, and I admit that it can happen to anyone, but maybe it happened to Mr. Dubin here. There's no record one way or the other as to why, but it's entirely possible that when a written order comes in and it now escalates what the judge said at the hearing to a mandatory ruling and you don't read it carefully, you may have in your mind, I know what Judge King's asking for, so you don't pick up on it. That doesn't answer Judge Berzon's question. He was specifically ordered to file within 30 days, and he didn't do so. There's nothing ambiguous about that order of July 30th as I read it. There are other things that those people were asking for. They got a lot of them. That is, but that's not the point. I mean, the question is, he has two opportunities to respond, and he misses two deadlines, one of which could not be more clear, the language that Judge Berzon just read. Yes, Your Honor. And then the court says to him, I want you to make an effort to get this material back, and I'll wait before I decide whether to impose the amount of the sanctions until I see how successful you are at getting it back. And as near as I can tell from the record, Mr. Dubin just sort of blew off the district court and made little, if any, effort to do what Judge King had ordered him to do. What I'm seeing as the appellate judge reviewing this record is a history of recalcitrance and, frankly, insubordination in terms of his relationship to the court that is very troubling. Sanction him for that. Do not sanction him for breaching the attorney-client privilege when you haven't gone through the proper procedure to determine that he did so. Now, you've been focusing on that procedure. I had assumed that this had to be an inherent authority sanction, and therefore it turns on bad faith. Yes. And there's been no finding of bad faith as such. So the question is, does that matter? First of all, are you seeing it that way? Yes. As an inherent sanction, inherent authority sanction? Yes. I went into the other things to show you the other possible areas that it could, someone could argue that it was a sanction under, but you'd have to comply with those procedures. But really, the only thing left is inherent. All right. Now, he wasn't told in advance that this was an inherent authority sanction or what it was. No. And there's been no finding of bad faith as such, which there would have to be. That's correct. So the question is whether the violation here was such that it was necessarily bad faith, or do we need to remand it to Judge King for a fine? No, that's what you're asking for. Yes. What if we just remand it to Judge King for a finding as to whether, for a hearing and a finding as to whether it was bad faith? Well, obviously that would be. He was asked whether he wanted witnesses. He said no. So he doesn't get an evidentiary hearing. He was asked for one. He was specifically asked if he wanted one. He said no. Right? Yes, Your Honor. So he's not going to get an evidentiary hearing at this point. Well, there's some. It's not entirely clear on that either, because the argument proceeded after that, and they had discussions, and then it was put over a week. And in that week, he wrote a letter. Apparently, from references to that letter in the second transcript, he was asking for evidentiary hearing. But be that as it may, that would be my second preferred choice. Obviously, I would prefer an outright reversal, but I certainly think at a minimum there has to be a finding, either bad faith, the sanction under the inherent authority doctrine, or if Judge King wants to go through the procedure of Rule 83.3, they can do that. But you can't drop it sort of in the crack in between these two things and say, well, just because you didn't answer something, I can find that you breached your duty to a client. That has consequences and effects that are far beyond. I mean, if the problem is you missed a deadline to respond, sanction him for contempt. Sanction him for disobeying the order to respond, but don't make a finding that he breached the attorney-client requirement. So is he facing disbarment if that one goes through? Well, in hypothetical theory, I suppose. One of the problems is that if you're disciplined for something else, in other words, if someone with a spotless record comes in and has that before him, they probably wouldn't get disbarment. They might get suspended or sanctioned for the censure. But then if you have something else in your record and then that comes in, it could cumulatively lead to that. So the risks are great for this kind of thing, and that's why we have to have the proper procedures. And I just think that Judge King is dancing between two or three different doctrines here without ever settling on one, and that was the problem below. He seemed to just be impatient with Mr. Dubin. He had some reason to be. Your client was not being very pleasant to Judge King, to put it mildly. As his counsel, I agree he's a difficult man to be patient with. But he's a very accomplished man. His resume is in the record. He was graduated number one in his law school class from New York University. He was board of the COIF, editor of the Law Review. He is not a fly-by-night practitioner. He represents usually people who are being foreclosed on. That's his principal practice. And he's the only guy in town doing it. About 60 percent of the work in that nature is all in his office. He's a very busy solo practitioner. Well, counsel, we have no pleasure in these kinds of cases. But I do share Judge Brezon's concern that just his attitude, as reflected in the record and his responses to the court's inquiry, is troubling. I would ask that he be sanctioned for his attitude if there's a rule for that, but not for betraying confidence of a client without a basis to do so. Thank you. Thank you very much. Thank you, Mr. Bicourt. The case is submitted. We will go to the next case on the calendar, United States v. Fafiti.
judges: Thompson, Berzon, Tallman